United States District Court
Southern District of Texas
**ENTERED**
October 27, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| HARVEY TORRES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00027 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF SOCIAL SECURITY,[1] | § | |
| | § | |
| Defendant. | | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

Harvey Torres ("Plaintiff") seeks judicial review of a final adverse decision by the Acting Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") pursuant to 42 U.S.C. § 405(g). Plaintiff's main concerns are the ALJ's residual functional capacity determination that Plaintiff can perform light work with some exceptions and typographical errors throughout the ALJ's denial. (Doc. No. 15, pp. 1–2.) Plaintiff requests the Court review the ALJ's decision and review the recording of the August 24, 2021 hearing with respect to the vocational expert's testimony. *Id.* at 1.

This social security appeal has been referred to the undersigned for memorandum and recommendation. On August 24, 2022, Plaintiff filed a brief in support of his claim. (Doc. No. 15.) On September 28, 2022, the Commissioner filed a response. (Doc. No. 18.) After review of the parties' briefing, the record, and the relevant law, and for the reasons discussed below, the

---

[1] Plaintiff listed the Social Security Administration as the defendant in this case, but Kilolo Kijakazi is the appropriate defendant.

1 / 19

undersigned recommends the decision of the Commissioner be affirmed and this case be dismissed.

### A. Jurisdiction.

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).  This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

### B. Standard of review.

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the decision applied the proper legal standard. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).  Substantial evidence is "more than a mere scintilla and less than a preponderance." *Perez*, 415 F.3d at 461 (citations and internal quotations omitted).  This means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Further, in applying this standard, "'[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.'" *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).  Rather, the court must scrutinize the record to determine whether substantial evidence is present.  *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.").

"If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed."  *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL

4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (citations omitted).  The reviewing

court "may affirm only on the grounds that the Commissioner stated for [the] decision."

*Copeland*, 771 F.3d at 923.

To qualify for disability insurance benefits, "a claimant must suffer from a disability."

*Id.*  A disability is defined as the "inability to engage in substantial gainful activity by reason of

any medically determinable physical or mental impairment that can be expected to result in death

or last for a continued period of 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a

claimant is disabled for the purposes of disability insurance, and thus entitled to disability

benefits, the ALJ employs a five-step approach, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a
> severe impairment, (3) the impairment meets the severity of an impairment
> enumerated in the relevant regulations, (4) it prevents the claimant from performing
> past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citing *Garcia v. Berryhill*, 880 F.3d 700, 704

(5th Cir. 2018)); *see* 20 C.F.R. § 404.1520.  The initial burden of proof lies with the claimant on

the first four steps, and at the fifth step, the burden shifts to the Commissioner, who must show

that, in light of the claimant's residual functional capacity ("RFC"), the claimant can perform

other substantial work in the national economy.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir.

1994).  The ALJ need not continue the analysis should, at any step, the Commissioner find that

the claimant is or is not disabled.  *See Copeland*, 771 F.3d at 923.

RFC, which is determined between the third and fourth steps, is the most a claimant can

do despite his or her limitations.  20 C.F.R. § 404.1545(a); *see Perez*, 415 F.3d at 461–62.  In

determining a claimant's RFC, the ALJ must consider all relevant medical and other evidence,

including statements by the claimant and his or her family members regarding the limitations that

result from the claimant's symptoms.  20 C.F.R. § 404.1545(a)(3).  The claimant is responsible for providing the evidence used to make a finding about RFC.  *Id.*  Yet, "the determination of residual functional capacity is the sole responsibility of the ALJ."  *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012); *Ripley v. Chater*, 67 F.3d 552, 447 (5th Cir. 1995).  The ALJ must articulate how persuasive he or she finds each of the opinions in the record and explain his or her conclusions regarding the supportability and consistency factors.  20 C.F.R. § 404.1520c(b)(2).

At step four, the ALJ must determine if the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  The term "past relevant work" means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  *Id*. § 404.1560(b)(2).  The work must also have lasted long enough for the claimant to learn to do the job and for the work to have been substantial gainful activity.  *Id*. §§ 404.1560(b), 404.1565.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.  *Id*. § 404.1560(b)(3).

When determining whether a claimant can perform past relevant work at the fourth step, an ALJ may rely upon a vocational expert's testimony to further investigate the claimant's residual functional capacity for work in light of a given set of limitations or impairments.  *Carey*, 230 F.3d at 140.  The issue relating to the vocational expert testimony used to assist the ALJ in step 4 is whether the ALJ's hypothetical question to the vocational expert reasonably incorporates the disabilities recognized by the ALJ.  *Bowling*, 36 F.3d at 435–36.  "A vocational expert is called to testify because of his [or her] familiarity with job requirements and working conditions" and may rely on his or her expertise to arrive at the conclusions he or she gives to the ALJ.  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).  If the claimant is unable to do any

past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(c).  Otherwise, the ALJ can end his or her disability analysis at step four.

### C. *Procedural background.*

Plaintiff filed an application for Title II disability benefits on May 17, 2020, alleging disability based on stage four prostate cancer, high blood pressure, gout, arthritis, high cholesterol, hearing loss, rectal dysfunction, and incontinence.  (Doc. No. 11-4, p. 5; 11-8, p. 3.)  Plaintiff's claims were initially denied, because "the evidence [did] not show that [Plaintiff's] ability to perform basic work activities [was] as limited as [he] indicated" and his condition was not severe enough to keep him from working, *see* Doc. No. 11-5, p. 9, and again denied upon reconsideration for the same reason.  (Doc. No. 11-5, p. 16.)  Subsequently, in March 2021, Plaintiff requested a hearing before an ALJ; that hearing was held on August 24, 2021.  *Id.* at 19–20; Doc. No. 11-3, p. 32.

Plaintiff, who was represented by counsel, appeared in person and testified under oath regarding his disability.  (Doc. No. 11-3, pp. 34, 36–57.)  Patricia McLaughlin, a vocational expert, also testified regarding Plaintiff's ability to complete hypothetical tasks and perform related employment duties.  *Id.* at 34, 58–60.

Based on vocational expert testimony, the ALJ concluded that Plaintiff could perform his past relevant work.  (Doc. No. 11-3, pp. 26–27.)  And, on September 9, 2021, the ALJ found Plaintiff "not disabled" pursuant to §§ 216(i) and 223(d) of the SSA and, therefore, not entitled to disability benefits.  *Id.* at 27.

On December 7, 2021, the Appeals Council denied Plaintiff's requested review, finding "no reason" to review the ALJ's decision.  *Id.* at 2, 6.

On February 8, 2022, Plaintiff timely filed this action for judicial review of the Commissioner's final decision.  (Doc. No. 1.)  Plaintiff prays that the Court review: (1) the ALJ's denial; and (2) the recording of the August 24, 2021 hearing, because Plaintiff believes the transcript of the hearing is inaccurate.  (Doc. No. 15, p. 1.)

### D.  The August 24, 2021 ALJ hearing and subsequent ALJ findings.

On August 24, 2021, Plaintiff appeared in person for a hearing before the ALJ.  (Doc. No. 11-3, p. 34.)  Plaintiff's attorney proffered that Plaintiff has been unable to work since July 19, 2020 because of his disability.  *Id.* at 36; *see also* 11-8, p. 3.  At the time of this alleged disability onset date, Plaintiff was 58 years old.  (Doc. No. 11-3, p. 36.)  Plaintiff is a high school graduate with an associate degree, married, and has no dependent children.  *Id.* at 36, 38. Plaintiff performed past work as a production controller with the Department of Defense, laborer with the steel plant, and TSA agent with the airport.  *Id.* at 36.  The primary basis for Plaintiff's disability claim is prostate cancer, high blood pressure, gout, and arthritis.  *Id.*

Plaintiff was diagnosed with prostate cancer in 2011.  (Doc. No. 11-3, p. 36.)  At that time, there was no metastatic disease.  *Id.*  However, beginning in 2014, Plaintiff's prostate-specific antigen (PSA)[2] level started rising and doctors felt that Plaintiff probably had prostate cancer.  *Id.*  Radiation therapy improved Plaintiff's condition until early 2020, when Plaintiff's PSA level began rising again.  *Id.*  At this point, Plaintiff's urologist told him he had stage four prostate cancer.  *Id.*  A CT scan performed on May 15 showed no evidence of metastatic disease,

---

[2]  "Prostate-specific antigen, or PSA, is a protein produced by normal, as well as malignant, cells of the prostate gland."  National Cancer Institute, Prostate-Specific Antigen (PSA) Test, https://www.cancer.gov/types/prostate/psa-fact-sheet#:~:text=There%20is%20no%20specific%20normal,have%20prostate%20cancer%20(1).  (last visited Oct. 24, 2022).  The PSA test measures the level of PSA in the blood, because people with prostate cancer generally have elevated blood levels of PSA.  *See id.*

but it was the rising PSA levels that led to the stage four diagnosis.  *Id.*  In May 2020, Plaintiff

was given a Zoladex injection.  (Doc. No. 11-3, pp. 36, 43–44.)  According to Plaintiff, Plaintiff

suffered severe side effects from the injection, including nausea, severe hot flashes, sleep

deprivation, and confusion that interfered with his job performance.  *Id.* at 36–37.  Three months

later, Plaintiff returned for a second injection, but Plaintiff's PSA was back down to zero,

rendering the additional injection unnecessary, so it was not administered.  *Id.* at 36.  At some

point in 2020, Plaintiff filed for disability retirement under the Federal Employee Retirement

System.  *Id.* at 37.  Plaintiff's application was granted in spring 2021, based on his prostate

cancer and its residual effects.  *Id.*  Plaintiff's attorney stated that the "theory of the case" for

Plaintiff's claimed disability under the disability insurance regulations was that Plaintiff's RFC is

less than sedentary.[3]  *Id.*

   After this hearing, the ALJ considered whether Plaintiff was disabled under §§ 216(i) and

223 of the Social Security Act.  (Doc. No. 11-3, p. 16.)  The ALJ found Plaintiff met the insured

status requirements of the Social Security Act through December 31, 2025.  *Id.* at 18.  In

working through the five-step sequential process, the ALJ also made the following

determinations:

  (1) Plaintiff has not engaged in substantial gainful activity since May 17, 2020,[[4]] the
    alleged onset date (20 C.F.R. § 404.1571 *et seq*.).  (Doc. No. 11-3, p. 18.)

  (2) Plaintiff had the following severe impairments: prostate cancer, hypertension, and
    degenerative joint disease of the knees (20 C.F.R. § 404.1520(c)).  *Id.* at 18–21.

  (3) Plaintiff did not have an impairment or combination of impairments of listing level
    severity pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

---

[3]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like
docket files, ledgers, and small tools," along with occasionally walking and standing.  20 C.F.R. § 404.1567(a).
[4]  The date should be July 17, 2020.  (Doc. No. 11-8, p. 3; Doc. No. 11-3, p. 42.)  May 17, 2020 was the date of
Plaintiff's application.  (Doc. No. 11-4, p. 5.)  This error in date indicated does not affect the undersigned's analysis.

404.1520(d), 404.1525 and 404.1526). *Id.* at 21.  Further, Plaintiff had the residual functional capacity (RFC) to perform light work pursuant to 20 C.F.R. § 404.1567(b)[5]—limited to performing only occasional[6] climbing of ramps and stairs but never ladders, ropes, or scaffolds, occasional stooping, kneeling, crouching, and crawling, and no working at unprotected heights. *Id.* at 22–26.

(4) Plaintiff was capable of performing past relevant work as a TSA agent and aircraft dispatcher. *Id.* at 26.  This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity (20 C.F.R. § 404.1565). *Id.* at 26–27.

The fourth step finding came from vocational expert testimony, in which the vocational expert was asked to consider a hypothetical individual of claimant's age, education, past work experience, and RFC.  (Doc. No. 11-3, p. 59.)  The ALJ asked the vocational expert if such an individual could perform Plaintiff's past relevant work. *Id.*  The vocational expert testified that such a hypothetical individual would be able to perform Plaintiff's past relevant work as a TSA agent or as an aircraft dispatcher. *Id.*  Accordingly, the ALJ determined Plaintiff had not been under a disability, as defined by the Social Security Act, from May 17, 2020,[7] through the date of the ALJ's decision on September 9, 2021. *Id.* at 27 (citing 20 C.F.R. § 404.1520(f)).

---

[5]  This regulation states:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

[6]  "Occasionally" for purposes of Social Security disability determinations means from very little up to one-third of the time, depending on the particular job. *See* Social Security Ruling (SSR) 83-14, 1983 WL 31254, at *2 (S.S.A. Jan. 1, 1983).

[7]  *See supra* n.4.

The ALJ stopped at the fourth step and did not evaluate Plaintiff's capacity to perform any other work at step five.

### E. Discussion.

Plaintiff contests the vocational expert's testimony that Plaintiff would be able to perform past relevant work as a TSA agent and aircraft dispatcher, because they "require extreme mental focusing, alertness, and comprehensive detailed capabilities which would compromise actual lives due to [his] memory loss, lack of ability to focus, fatigue, history of stroke, [and] depression." (Doc. No. 15, p. 1.)  In particular, Plaintiff contends he is disabled from performing either the TSA agent or aircraft dispatcher positions because of the side effects stemming from his Zoladex treatment.  *Id.* at 2.  Plaintiff claims that, at the hearing, the vocational expert "verbally stated that there was not any employment [Plaintiff] could maintain with his current conditions and side effects."  *Id.* at 1.  Plaintiff requests a review of the hearing recording as "the testimony of the vocational expert does not reflect her verbal testimony in the hearing."  *Id.*

Plaintiff also points to a December 2019 episode of confusion where Plaintiff lost his memory for an entire day.  (Doc. No. 15, p. 2.)  Plaintiff notes that he had a previous stroke during that hospitalization and his blood pressure was "extremely high."  *Id.*  Further, Plaintiff asserts that the administrative transcript contains multiple spelling errors and one error in naming his diagnosis.[8]  *Id.*  Finally, Plaintiff takes issue with the use of the word "alleged" when referencing his diagnoses and emphasizes that his diagnoses are authentic and supported by the evidence.  *Id.*

---

[8] Plaintiff states he was not diagnosed with "Rectial Disfunction" but rather with erectile dysfunction.  (Doc. No. 15, p. 2.)

9 / 19

The Commissioner argues that the ALJ's RFC finding is consistent with, and supported by, the findings of the state agency medical consultants that reviewed the evidence of record in August and December 2020.  (Doc. No. 18, p. 6.)  In addition, the Commissioner asserts the ALJ's RFC finding is consistent with the 2020 physician notations indicating that Plaintiff was not permanently disabled or unable to work.  *Id.*

### 1. Substantial evidence supports the ALJ's RFC finding that Plaintiff can perform a range of light work, with the listed exceptions.

Federal regulations and caselaw used to require an ALJ to give controlling weight to a treating physician's opinion; however, this is no longer the case.  "For claims filed after March 27, 2017, an ALJ instead considers a list of factors in determining what weight, if any, to give a medical opinion."  *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (*comparing* 20 C.F.R. § 404.1527 (2016) *with* 20 C.F.R. § 404.1520c).  In other words, the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a).  Plaintiff initiated his case on May 17, 2020.  (Doc. No. 11-4, p. 5.)  Therefore, the new rule applies.

Accordingly, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency.  20 C.F.R. § 404.1520c(c)(2).  Importantly, "[a]n ALJ must articulate how [they] considered the supportability and consistency factors for a medical opinion . . . in [their] determination."  *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0055-BU, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020) (citing § 404.1520c(b)(2)).

As to supportability, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  Consistency means that the more consistent a medical opinion or prior administrative finding is, the more persuasive the medical finding will be.  *Id.* § 404.1520c(c)(2).  An adequate explanation of supportability and consistency is one that "enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof."  *Luckett v. Kijakazi*, 2021 WL 5545233, at *4 (quoting *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)).

To determine whether there is substantial evidence of disability, the Court weighs: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his [or her] age, education, and work history."  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (1991)).  In evaluating a plaintiff's claims of disabling pain to determine the resulting limitations on her ability to work, the ALJ must follow the requirements set forth in 20 C.F.R. § 404.1529.  According to this regulation, the ALJ must first determine that the plaintiff has "a medical impairment(s) . . . [that] could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529.  Next, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms, considering "all of the available evidence from [the plaintiff's] medical sources and nonmedical sources about how [the plaintiff's] symptoms affect [them]." *Id.* § 404.1529(c).  Other factors relevant to the ALJ's determination of the plaintiff's symptoms include the plaintiff's daily activities, the location, duration, frequency, and intensity

of the plaintiff's pain or other symptoms, and the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms, among many other factors.  *Id.* § 404.1529(c)(3).  The ALJ is not required to incorporate limitations in the RFC that he or she does not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (*per curiam*).  "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (*per curiam*) (citations omitted).

The ALJ's responsibility is to "interpret" the medical evidence to determine capacity to work.  *Lasher v. Berryhill*, No. A-17-CV-464 AWA, 2018 WL 4560215, at *3 (W.D. Tex. Sept. 21, 2018) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)).  For a plaintiff to show the ALJ erred in this determination, "the plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ, not only that some conflict might appear to exist between a claimant's purported symptoms and the RFC."  *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019), *adopted sub nom. Crista B. v. Saul*, No. 1:18-CV-042-C-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019).  Even if the court determines the evidence "preponderates in [the claimant's] favor," the court must still affirm the Commissioner's findings "unless [it finds] that there is not substantial evidence to support the ALJ's findings."  *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985) (citing *Patton v. Schweiker,* 697 F.2d 590, 592 (5th Cir.1983); *Olson v. Schweiker,* 663 F.2d 593, 595 (5th Cir. 1981)).

Primarily, the ALJ found certain medical opinion evidence and a prior administrative medical finding unpersuasive as to Plaintiff's RFC determination.  The ALJ considered the

August 12, 2020 report performed by state agency medical consultant Scott Spoor, M.D. and the December 28, 2020 report by state agency medical consultant Lawrence Ligon, M.D.  (Doc. No. 11-3, p. 26; *see also* Doc. No. 11-4, pp. 6–17, 28–37.)  The ALJ found that both opinions were mostly persuasive as they were consistent with each other even considering the consultative examination, however, the ALJ added some limitations, including a limitation to light work, based on Plaintiff's degenerative joint disease, Plaintiff's ongoing treatment for prostate cancer, and Plaintiff's hypertension.  *Id.* (citing Doc. No. 11-15, pp. 5–12, Doc. No. 11-18, pp. 9–10; Doc. No. 11-20, p. 5; Doc. No. 11-21, p. 4; Doc. No. 11-23, p. 7; Doc. No. 11-24, pp. 4–5).  Next, the ALJ considered the August 7, 2020 third party function report from Plaintiff's wife.  *Id.* (citing Doc. No. 11-8, pp. 14–22).  The ALJ found the opinions of Plaintiff's wife about what the claimant is capable of doing to be unpersuasive because "[i]t is inconsistent and unsupported" given Plaintiff's wife "[did] not appear to be medically trained to make such assessments."  *Id.*

Further, although a note from the Office of Personnel Management ("OPM") dated May 3, 2021 indicated that Plaintiff applied for disability retirement and was found to be disabled from his position as a production controller because of his prostate cancer, *see* Doc. No. 11-10, p. 2, the ALJ, upon consideration, did not find it persuasive in the context of Plaintiff's medical records.  (Doc. No. 11-3, p. 26.)  The ALJ explained that "[t]he note was not supported with specific medical rationale or consistent with the medical opinion evidence."  *Id.*  In addition, OPM's criteria for retirement benefits may differ from Social Security's criteria for disability payments.  *Id.*  For those reasons, the ALJ did not find OPM's opinion persuasive regarding Plaintiff's residual functional capacity.

Also, Plaintiff's side effects and Plaintiff's December 2019 episode of confusion resolved, and Plaintiff worked until his alleged onset date of July 17, 2020. (Doc. No. 11-7, p. 11; Doc. No. 11-8, p. 3; Doc. No. 11-11, pp. 17, 24, 27; Doc. No. 15, pp. 6, 10, 13, 15.) The medical evidence shows that following the "unfortunately significant" side effects from Zoladex, Dr. Chichakli recommended a three-month break from the medicine. (Doc. No. 11-24, pp. 5–7.) Dr. Chichakli started Plaintiff on intermittent androgen deprivation therapy (IADT)[9] on November 24, 2020 and Plaintiff had ongoing IADT for prostate cancer, which helped reduce his PSA levels. (Doc. No. 11-23, p. 8; Doc. No. 11-15, pp. 5–12 (noting Plaintiff's PSA levels were down to zero as of Nov. 4, 2020); Doc. No. 11-20, p. 7.) There is no evidence that Plaintiff used Zoladex after his July 17, 2020 alleged onset date. *See* Doc. No. 11-7, p. 11; Doc. No. 11-8, p. 3. Thus, with respect to the period at issue, side-effects from Zoladex did not satisfy the twelve-month duration requirement to qualify as a disability. *See* 20 C.F.R. § 404.1509 (duration requirement).

Further, other medical opinion evidence the ALJ found persuasive provides substantial evidence to support the ALJ's conclusion that Plaintiff was not permanently disabled and unable to work. This included: (1) a September 2, 2020 addendum from Ramsey Chichakli, M.D. that Dr. Chichakli was unable to provide Plaintiff with a letter stating he was permanently disabled and unable to work due to Plaintiff's ongoing treatment (Doc. No. 11-24, p. 5); (2) a September 9, 2020 notation by Anne M. Brancaccio, M.D. that Plaintiff wanted a letter stating he is permanently disabled but was not permanently disabled per the last urology note (Doc. No. 11-

---

[9] "With intermittent androgen deprivation, hormone therapy is given in cycles with breaks between drug administrations, rather than continuously." National Cancer Institute, *Hormone Therapy for Prostate Cancer: What is intermittent ADT?*, https://www.cancer.gov/types/prostate/prostate-hormone-therapy-fact-sheet#what-is-intermittent-adt (last visited Oct. 26, 2022).

24, p. 4); (3) a January 13, 2021 medical history report by Emil P. Thyssen, M.D. detailing that the PET-CT/Bone scan was without evidence of metastatic disease and, following the noted side effects from Zoladex, Plaintiff was on a break from IADT (his last treatment having been in May 2020) (Doc. No. 11-23, p. 3); (4) a March 2021 report for medications for Plaintiff's acne, allergies, gout, high cholesterol, general pain, blood pressure, and reflux, with no indication of Zoladex (Doc. No. 11-9, pp. 8–9); and (5) an April 7, 2021 record indicating Plaintiff had been going through IADT for elevated PSA in 2020, but that the most recent PSA testing returned with normal levels (Doc. No. 11-20, pp. 7–9).

Finally, although Plaintiff identified what he believes to be transcript errors, none of these errors were material. *See* Doc. No. 15, p. 2. "The burden of showing that an alleged error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 566 U.S. 396, 407 (2009) (citation omitted); *see also Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012). As Plaintiff merely asserts that the denial transcript is "loaded with error of my diagnosis" and "loaded with misdiagnosis or errors" without providing evidence of how these supposed errors materially affected the ALJ's findings, Plaintiff has not met this burden. *See* Doc. No. 15, pp. 1–2.

In sum, the evidence does not show that Plaintiff had greater functional limitations than those identified by the ALJ that would last a duration of twelve months for Plaintiff to qualify as disabled. *See* 20 C.F.R. § 404.1509 (duration requirement). The ALJ's RFC finding is consistent with, and supported by, the findings of the state agency medical consultants and the physician notations indicating Plaintiff was not disabled or unable to work. Further, Plaintiff has failed to show that the ALJ committed any material error affecting the RFC determination. Therefore, substantial evidence supports the ALJ's RFC finding, with the listed exceptions.

***2.  Substantial evidence supports the ALJ's finding that Plaintiff can
perform past relevant work and is therefore not disabled.***

At step four, with past relevant work, the ability to perform one occupation is sufficient and determinative to show a plaintiff is not disabled.  *See* 20 C.F.R. § 404.1560.  To demonstrate that he is disabled at step four, Plaintiff must show that he "lacks the residual functional capacity to perform: (1) the actual functional demands and job duties of [his] past job[(s)] and (2) the functional demands and job duties of the occupation[(s)] as generally required by employers in the national economy."  *Alfred v. Barnhart*, 181 F. App'x 447, 451 (5th Cir. 2006) (citations omitted).

Here, the ALJ found that Plaintiff can perform two of his prior occupations—TSA agent and aircraft dispatcher, which meet the definition of "past relevant work."  (Doc. No. 11-3, pp. 26–27.)  First, both positions were performed within the 15 years preceding the ALJ's September 2021 decision, as Plaintiff worked as a TSA agent from January 2002 to March 2009 and as an aircraft dispatcher between May 2009 and July 2020.  *Id.* at 26; *see also* Doc. No. 11-8, p. 26. Second, based on Plaintiff's earnings record, Plaintiff's work in both positions constituted substantial gainful activity.  (Doc. No. 11-3, p. 27; *see also* Doc. No. 11-7, pp. 18, 29–31.) Finally, there is no evidence indicating, nor does Plaintiff claim, that either of his positions did not last long enough for him to learn how to do it.[10]  Accordingly, Plaintiff's prior positions as a TSA agent and aircraft dispatcher are considered "past relevant work."  *See* SSR 82-62, 1982 WL 31386; Doc. No. 11-3, p. 27.

---

[10]  Unskilled work at SVP 2 (which includes TSA agent) requires no more than one month to learn, and skilled work at SVP 8 (which includes aircraft dispatcher) takes between four and ten years to learn (Dictionary of Occupational Titles Fourth Ed., Appendix C).  (Doc. No. 11-3, p. 27.)

Although Plaintiff testified at his administrative hearing that he was unable to accomplish his job tasks due to side effects from the Zoladex injection, *see* Doc. No. 11-3, pp. 43–44, there is substantial evidence, apart from Plaintiff's testimony, that supports the ALJ's finding that Plaintiff has the residual functional capacity to perform the actual functional demands of his past jobs as a TSA agent and aircraft dispatcher.

Primarily, the vocational expert identified TSA agent (DOT 372.667–010, approximately 90,000 jobs in national economy), classified as light unskilled work, SVP 2, and aircraft dispatcher (DOT 912.167–010, approximately 2,200 jobs in national economy), classified as sedentary skilled work, SVP 8, as two prior positions Plaintiff could still perform. *See* Doc. No. 11-3, pp. 26, 59.  The ALJ presented two hypothetical questions to the vocational expert and ultimately relied on the response to the first hypothetical question. *Id.* at 22, 26–27, 59–60.  In response to the first hypothetical question, the vocational expert stated that Plaintiff, with a limitation of occasionally climbing ramps and stairs, no climbing ladders, ropes, or scaffolds, occasionally stooping, kneeling, crouching, crawling, and no work at unprotected heights, could perform past relevant work at the light exertional level. *Id.* at 59.  In response to the second hypothetical question presented, the vocational expert testified that the additional limitations presented would preclude work. *Id.* at 59–60.  This is where the undersigned believes Plaintiff has misunderstood the vocational expert's testimony to mean that there was no employment available to Plaintiff. *See* Doc. No. 15, p. 1.  In fact, however, the ALJ did not find that the additional limitations applied to Plaintiff; therefore, the ALJ did not adopt the vocational expert's response to the second hypothetical. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) (stating the ALJ is not bound by vocational expert testimony which is based upon evidentiary assumptions not ultimately accepted by the ALJ).

17 / 19

Based on the above analysis, substantial evidence supports the ALJ's determination that Plaintiff's prior positions as TSA agent and aircraft dispatcher are "past relevant work", and because Plaintiff retains the residual functional capacity to perform such work, he is not disabled.

### F.  Conclusion and recommendation.

After review of the parties' briefing, the record, and relevant law, and for the reasons discussed above, the undersigned concludes that the Commissioner applied the proper legal standard in evaluating the medical opinions, determining Plaintiff's RFC, and finding Plaintiff not disabled, and the Commissioner's decision was supported by substantial evidence.  The undersigned therefore recommends the decision of the Commissioner be affirmed and this case be dismissed.

### G.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, and the United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District

Court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on October 26, 2022.

                              MITCHEL NEUROCK
                              United States Magistrate Judge

19 / 19